IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ABIGAIL ARROYO,<br><br>**Plaintiff**,<br><br>v.<br><br>FDIC, *et al.*,<br><br>**Defendants**. | **CIVIL NO**. 12-1433 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Camilo Velazquez-Velez ("Velazquez"), defendant Banco Popular's ("BPPR"), and defendant Luis F. Carlo-Mendoza's ("Carlo") motions to dismiss the case and motions for summary judgment. (Docket Nos. 34 & 40.) Also before the Court is plaintiff Abigail Arroyo's ("Arroyo") motion for summary judgment. (Docket No. 82.) After reviewing the motions and the relevant responses and replies, the Court **GRANTS** defendants Velazquez's and BPPR's motion to dismiss, (Docket Nos. 34 & 40). The Court finds **MOOT** the motions for summary judgment. (Docket Nos. 34 & 82.)

**DISCUSSION**

**I.   Background**

The Court declines to rehash all of the facts. Background information or facts will be recounted as needed in the Court's

Civil No. 12-1433 (FAB)                                                    2

subsequent legal analysis of particular issues.  See United States v. Stierhoff, 549 F.3d 19, 21 (1st Cir. 2008).

On June 4, 2012, plaintiff Arroyo filed a *pro se* complaint requesting a fair trial for "violation of civil rights" and alleging that "[p]laintiff's lawsuit pertains to the FDIC in its corporate capacity . . ." (Docket No. 1 at pp. 1 & 12.)  In the complaint, plaintiff Arroyo describes how on November 10, 2008, he filed a lawsuit in the Puerto Rico Court of First Instance in Aguadilla ("the Puerto Rico trial court") against certain parties, including Westernbank,[1] regarding a sales-purchase agreement on a piece of property.  (Docket No. 1 at pp. 1-5; Docket No. 48-1 at p. 2.)  Specifically, plaintiff Arroyo argued that all defendants were "jointly and severally liable for having made him to believe that the transaction that was carried out was lawful and correct." (Docket No. 48-1 at p. 2.)  The parties agree that on April 30, 2010, while this case was ongoing in the Puerto Rico trial court, the Office of the Commissioner of Financial Institutions of the

---

[1] In support of his claim, plaintiff Arroyo submitted untranslated Spanish language documents, which indicate that defendant BPPR was also listed as a defendant in the Commonwealth case.  (See Docket No. 50-1 at pp. 28 & 31.)  Although the Court does not consider Spanish language documents, see Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008), the Court is not relying on the documents for their actual substance. The Court can read BPPR's name, which is listed in the caption of the case, as a defendant.  Furthermore, both parties agree that defendant BPPR took over certain assets and liabilities of Westernbank when the Commissioner of Financial Institutions ordered it closed.  (See Docket No. 1 at p. 5; Docket No. 34 at p. 3; Docket No. 40 at p. 1.)

Civil No. 12-1433 (FAB)                                                    3

Commonwealth of Puerto Rico ("OCFIC-PR") determined that Westernbank was not in good financial condition and could not continue its business. (See Docket No. 1 at p. 5; Docket No. 34 at p. 3.) Therefore, the OCFIC-PR closed the bank and appointed the Federal Deposit Insurance Corporation as receiver of the failed bank. Id.

On June 7, 2011, the Puerto Rico trial court substituted the defendant Westernbank[2] with the FDIC. (Docket No. 48-1 at p. 4.) On July 15, 2011, instead of choosing to remove the case to federal court,[3] the FDIC filed a motion to dismiss the case before the Puerto Rico trial court, alleging that plaintiff Arroyo failed to exhaust administrative remedies pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d)(6). (Docket No. 48-1 at p. 4.) The Puerto Rico trial court agreed with the FDIC and on October 24, 2011, it issued a "Report of Proceedings, Factual Determinations,

---

[2] As stated earlier, BPPR was also listed as a defendant in the Commonwealth case. The Puerto Rico trial court, therefore, substituted both Westernbank and BPPR with the FDIC.

[3] The Federal Deposit Insurance Act ("FDIC Act"), 12 U.S.C. § 1819, states that all civil lawsuits in which the FDIC is a party, in any capacity, "shall be deemed to arise under the laws of the United States." The FDIC Act also provides, however, that if any action, suit, or proceeding against it is filed in state court, the FDIC "may . . . remove . . . to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party." 12 U.S.C. § 1819(b)(2)(B).

Civil No. 12-1433 (FAB)                                                         4

Legal Conclusions and Partial Summary Judgement," which dismissed plaintiff Arroyo's complaint with respect to the FDIC in its capacity as Westernbank's receiver. Id. at pp. 5-7. Notably, the Puerto Rico trial court determined that plaintiff Arroyo received proper notice of (1) the FDIC's appointment as the receiver for Westernbank, and (2) the fact that a plaintiff must exhaust administrative remedies before pursuing his or her claim in any court. Id. Furthermore, it found that plaintiff Arroyo failed to exhaust his administrative remedies pursuant to FIRREA, and, therefore, it had no jurisdiction over plaintiff Arroyo's case. On November 28, 2011, plaintiff Arroyo appealed the Puerto Rico trial court's decision. Id. at p. 7. On March 28, 2012, the Puerto Rico Court of Appeals affirmed the Puerto Rico trial court's decision. Id. at pp. 23-25.

    Plaintiff Arroyo also alleges that he did not receive proper notice of the FDIC's appointment and of the requirement to exhaust administrative remedies. (Docket No. 1 at pp. 9-10.) In addition, plaintiff Arroyo describes how he enlisted the help of two attorneys to help him with his case in the Puerto Rico courts. (Docket No. 1 at p. 11.) He states that he hired defendant Velazquez as his second lawyer on September 21, 2011. Id. He argues, however, that defendant Velazquez failed to help plaintiff Arroyo with his contentions. Id. Given these facts, plaintiff Arroyo argues that the Puerto Rico trial court, the FDIC, and

Civil No. 12-1433 (FAB)                                              5

various officers, including those who worked for the FDIC and Westernbank, and two lawyers, defendant Luis F. Morales-Gonzalez ("Morales") and defendant Velazquez; violated his civil rights. (Docket No. 1 at pp. 6 & 12.)

On November 9, 2012, defendant Velazquez filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") for lack of subject-matter jurisdiction and 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim. (Docket No. 34.)  On that same day, defendant Velazquez also filed a motion for summary judgment. Id. He contends that plaintiff's claims are barred under the Rooker-Feldman doctrine. Id. at pp. 6-7.  He also argues that plaintiff Arroyo's legal action against the FDIC and its federal officers is barred by *res judicata* and collateral estoppel. Id. at pp. 7-8.  In the alternative, defendant Velazquez argues that plaintiff's claims should be dismissed for failure to exhaust administrative remedies pursuant to FIRREA.[4] Id. at p. 8. Furthermore, defendant Velazquez argues that the remaining malpractice claim against him is based in tort under Commonwealth

---

[4] Because the Court determines that plaintiff Arroyo's claims are jurisdictionally barred under the Rooker-Feldman doctrine, it declines to address the other arguments presented by defendant Velazquez regarding why plaintiff's claim cannot proceed in federal court. See Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 7 (1st Cir. 2004) (discussing how Rooker-Feldman is a jurisdictional issue and "if the district court determines that it does have jurisdiction over the suit, then it should address the res judicata and issue preclusion effects (if any) of the judgment by the Commonwealth's highest court.")

law, and, therefore, should be dismissed because no federal cause of action exists.  (Docket No. 34 at pp. 15-16.)  In the alternative, he also argues that even if this Court has jurisdiction over plaintiff Arroyo's case, plaintiff Arroyo has failed to state a claim against defendant Velazquez given the facts that were stated in the complaint.  Id. at pp. 16-19.

On November 20, 2012, defendant BPPR filed a motion to join defendant Velazquez's motion to dismiss and his motion for summary judgment.  (Docket No. 40.)  In that motion, BPPR reiterates the arguments that defendant Velazquez stated in his motion, (Docket No. 34), regarding the Rooker-Feldman doctrine and res judicata.  (Docket No. 40.)  On December 4, 2012, plaintiff Arroyo filed a response in opposition to defendants Velazquez's and BPPR's motions.  (Docket No. 50.)  On December 24, 2012, defendant Carlo also requested to join both defendants Velazquez's and BPPR's motions, (Docket Nos. 34 & 40).  (Docket No. 59.)  On December 26, 2012, the Court granted defendant Carlo's motion.  (Docket No. 61.)  On January 3, 2013, the Court reminded plaintiff that the Court may appoint *pro bono* counsel for him.  (Docket No. 70.)

After reviewing all of the relevant motions, responses, replies, and exhibits, the Court agrees with defendants Velazquez, BPPR and Carlo.  Therefore, the Court **GRANTS** defendants' motion to dismiss. Defendants' and plaintiff's motions for summary judgment,

Civil No. 12-1433 (FAB)                                                7

(Docket Nos. 34 & 82), and plaintiff Arroyo's motion for summary judgment, are deemed **MOOT**.

**II.  Legal Standards**

    **A.  *Pro Se***

"As the [Supreme] Court unanimously held in Haines v. Kerner, 404 U.S. 519 (1972), a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' . . . ." Hughes v. Rowe, 449 U.S. 5, 10 (1980).  Therefore, a district court must construe a *pro se* plaintiff's pleadings somewhat liberally.  Instituto de Education Universal Corp. v. U.S. Dept. of Educ., 209 F.3d 18, 23 (1st Cir. 2000) ("The Supreme Court has long held that complaints drafted by non-lawyers are to be construed with some liberality.") *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." Velez-Villaran v. Carico Int'l., Inc., 715 F.Supp.2d 250, 252 (D.P.R. 2010) (citing Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006)).

    **B.  Legal Standard Under Rule 12(b)(1) and Rule 12(b)(6)**

Federal courts are courts of limited jurisdiction. Destek Grp. v. State of N.H. Pub. Utils. Comm'n., 318 F.3d 32, 38 (1st Cir. 2003).  Accordingly, "federal courts have the duty to construe their jurisdictional grants narrowly." Fina Air, Inc. v. United States, 555 F.Supp.2d 321, 323 (D.P.R. 2008) (citing Alicea-

Civil No. 12-1433 (FAB)                                                    8

Rivera v. SIMED, 12 F. Supp. 2d 243, 245 (D.P.R. 1998)).  Because federal courts have limited jurisdiction, the party asserting jurisdiction carries the burden of showing the existence of federal jurisdiction.  Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998) (internal citations omitted).

Pursuant to Rule 12(b)(1), a party may move to dismiss an action for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1); see also Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001) (discussing how Rule 12(b)(1) is the "proper vehicle for challenging a court's subject-matter jurisdiction.")  Motions brought pursuant to Rule 12(b)(1) are subject to a similar standard as Rule 12(b)(6) motions.  Defendants move to dismiss this action pursuant to both Rules 12(b)(1) and 12(b)(6).[5]

Subject-matter jurisdiction is properly invoked when a colorable claim "arising under" the Constitution or laws of the United States is pled.  28 U.S.C. § 1331; Arbaugh v. Y&H Corp., 546 U.S. 500, 513 (2006) (internal citation omitted).  Usually, a claim arises pursuant to federal law if a federal cause of action emerges

---

[5] Defendants Velazquez, BPPR, and Carlo state that they move to dismiss under both Rules 12(b)(1) and 12(b)(6).  Because the standard is almost identical for both rules, the Court will focus its analysis on the defendants' Rule 12(b)(1) argument, which is dispositive in this case.  Furthermore, these defendants also move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (See Docket No. 34.)  As stated earlier, because the Court grants defendants' motion to dismiss, it declines to address either defendants' or plaintiff's arguments regarding summary judgment.

from the face of a well-pleaded complaint.  See Viqueira, 140 F.3d at 17 (internal citations omitted).

## III. Analysis

### A. Rooker-Feldman Doctrine

Federal district courts lack jurisdiction over complaints that invite review of state or Commonwealth court judgments under the Rooker-Feldman doctrine.[6]  See Coggeshall v. Massachusetts Bd. of Registration of Psychologists, 604 F.3d 658, 663 (1st Cir. 2010) (discussing how the Rooker-Feldman doctrine prevents "the losing party in state court from filing suit in federal court after the state proceedings have ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." (internal citation and quotation marks omitted)); see also Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 68 (1st Cir. 2008) (citing Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 6 (1st Cir. 2004) (discussing how Puerto Rico is treated as a state for the Rooker-Feldman doctrine)).  The doctrine applies, however, only when state proceedings have ended. Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 24 (1st Cir. 2005) ("If federal litigation is initiated before state proceedings have ended, then–even if the federal plaintiff expects

---

[6] This doctrine was enunciated by the United States Supreme Court in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

Civil No. 12-1433 (FAB)                                                 10

to lose in state court and hopes to win in federal court–the litigation is parallel, and the Rooker-Feldman doctrine does not deprive the court of jurisdiction."). Therefore, four factors must be met before a federal court can decide that it lacks jurisdiction over the federal complaint: (1) the complaints must be brought by the losing party in state court; (2) the federal plaintiff complains of injuries caused by state court judgments; (3) the state court judgment must be rendered before the district court proceedings have started; and (4) the federal plaintiff must request that the district court review and reject the state court judgment. Echevarria-Chaparro v. Banco Popular of Puerto Rico, 2010 WL 1416742, at *1 (D.P.R. March 31, 2010) (citing Silva v. Commonwealth of Massachusetts, 351 Fed. Appx. 450, 454 (1st Cir. 2009) and Lance v. Dennis, 546 U.S. 459, 464 (2006)). The doctrine is "jurisdictional in nature; if a case is dismissed because the Rooker-Feldman doctrine applies, it means the court has no subject matter jurisdiction to hear the case." In re Middlesex Power Equip. & Marine, Inc. 292 F.3d 61, 66 n.1 (1st Cir. 2002).

First, it is clear from the allegations in Arroyo's complaint that he was the unsuccessful party in the Commonwealth Court action. The Puerto Rico trial court dismissed plaintiff Arroyo's complaint with respect to his claims against the FDIC on October 24, 2011. (Docket No. 48-1 at p. 7.) On March 28, 2012, the Puerto Rico Court of Appeals affirmed the Puerto Rico trial

Civil No. 12-1433 (FAB)                                              11

court's decision.  Id.  The second factor is also met because plaintiff alleges that the Puerto Rico courts incorrectly decided his case, which is what caused his injury.[7]  See Davison v. Gov't. of Puerto Rico-Puerto Rico Firefighters Corps., 471 F.3d 220, 223 (1st Cir. 2006) (discussing how the Rooker-Feldman doctrine applies when "the only real injury to plaintiff is ultimately still caused by a state-court judgment", regardless of how the claim is phrased.)

With regard to the third factor, the state court judgment was sufficiently final for Rooker-Feldman to apply.  The First Circuit Court of Appeals has indicated that state or Commonwealth proceedings could be considered to have "ended" for Rooker-Feldman purposes "if the state court proceedings have finally resolved all the federal questions in the litigation . . ."  Federacion de Maestros de P.R., 410 F.3d at 25.  The Puerto Rico trial court issued its opinion regarding plaintiff's federal questions on October 24, 2011, almost one year before plaintiff filed his complaint in federal court on June 4, 2012.  Next, the Puerto Rico appeals court issued its opinion on March 28, 2012, nearly three months before plaintiff filed his complaint in federal court.  The Puerto Rico appeals court attached a "Notice of Judgment" to the

---

[7] For example, in his complaint, plaintiff Arroyo states that ". . . on October 24, 2011, lawsuit ADP 2008-0045 was revoked by the Court of First Instance Aguadilla Part in violation of my civil rights."  (Docket No. 1 at p. 6.)

opinion, indicating that the parties have a right to appeal. (Docket No. 48-1 at p. 25.) In Puerto Rico, however, parties have thirty days to appeal an opinion issued by the Commonwealth courts of appeals and that period expired before plaintiff filed his claim in federal court. See P.R. Laws Ann. Tit. 32, Ap. III. R. 20(A)(1). Plaintiff Arroyo also does not indicate that he filed any request for review in the Puerto Rico Supreme Court. Therefore, the state court judgment is final and has "ended" for Rooker-Feldman purposes.

Finally, with regard to the fourth factor, plaintiff Arroyo's federal complaint requests that the Court review and reject the state court judgment. While plaintiff Arroyo adds a number of defendants that were not present in his Commonwealth court case, including individual attorneys who worked for the FDIC and Westernbank, to grant plaintiff's request for relief, the Court would have to "declare that the state court wrongly decided" the state action. See e.g., Davison, 471 F.3d at 223. Plaintiff Arroyo's federal complaint focuses entirely on facts dealing with the Commonwealth proceedings and how he did not receive the proper notice that he needed to exhaust administrative remedies; the latter issue was discussed at length by both the Puerto Rico trial court and the Puerto Rico court of appeals. Thus, not only does this Court have to review all of the factual findings that the Puerto Rico trial court and the Puerto Rico court of appeals made,

Civil No. 12-1433 (FAB)                                              13

but it would also need to determine that all of their legal conclusions were incorrect in order for plaintiff to obtain relief. Those determinations are prohibited by the Rooker-Feldman doctrine, which states that a federal district court lacks subject matter jurisdiction over lawsuits that seek to reverse or modify state-court judgments.

Therefore, the Court **GRANTS** the defendants' motion to dismiss the case for lack of subject matter jurisdiction with respect to defendant FDIC and its attorneys, defendant Westernbank and its officers, defendant BPPR, defendant OCFIC-PR and its officers, and all other defendants except for defendant Velazquez and defendant Morales.

B.  **Plaintiff's Claim Against Defendant Velazquez**

As stated earlier, plaintiff Arroyo alleges that "Mr. Velazquez had the opportunity to help the plaintiff with his legal controversy . . . but Mr. Velazquez remained silent and didn't contribute to the plaintiff's contentions."  (Docket No. 1 at p. 11.)  Thus, plaintiff Arroyo contends that defendant Velazquez was negligent in his duties as an attorney.  From what the Court can glean from the federal complaint, plaintiff Arroyo makes a similar argument for defendant Morales, another attorney who was employed by him before he retained defendant Velazquez. (Docket No. 1 at pp. 10-12.)  Even though plaintiff Arroyo argues that he is not bringing a tort action, (see e.g., Docket No. 50 at

p. 21), such a claim can only be brought as a legal malpractice claim under Puerto Rico tort law.  Because the court grants the defendants' motion to dismiss for lack of subject matter jurisdiction, however, no federal claim remains upon which to ground jurisdiction over any Commonwealth claims alleged by plaintiff Arroyo.  Furthermore, the Court declines to exercise its supplemental jurisdiction over those claims.  <u>See</u> 28 U.S.C. § 1367(c).  Accordingly, plaintiff Arroyo's legal malpractice claim against defendants Velazquez and Morales, which is a Commonwealth law claim, is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3), which permits plaintiff Arroyo to bring his malpractice claims against attorneys Velazquez and Morales in the Commonwealth Courts, not in Federal Court.

## CONCLUSION

Having considered the defendants' motion to dismiss and all of the relevant responses, replies, and exhibits, the Court **GRANTS** defendants' motion to dismiss pursuant to Rule 12(b)(1).  Accordingly, the plaintiff's claims against the FDIC, BPPR, and all other defendants except for defendants Velazquez and Morales are **DISMISSED with prejudice**.  Because no federal claim remains upon to ground jurisdiction over plaintiff's Commonwealth law claims, the Court also **DISMISSES** plaintiff Arroyo's legal malpractice claim against defendants Velazquez and Morales **without prejudice**.  The

Civil No. 12-1433 (FAB)                                                   15

Court finds **MOOT** the motions for summary judgment.  (Docket Nos. 34 and 82.)

　　Judgment shall be entered accordingly.

　　**IT IS SO ORDERED.**

　　In San Juan, Puerto Rico, August 16, 2013.

　　　　　　　　　　　　　　　　　　s/ Francisco A. Besosa
　　　　　　　　　　　　　　　　　　FRANCISCO A. BESOSA
　　　　　　　　　　　　　　　　　　United States District Judge